EL PUEBLO DE PUERTO RICO, representado por el COMISIONADO DE INSTRUCCIÓN INTERINO, SR. FRANCISCO COLLAZO, demandante, apelante y apelado, *v.* SUCESIÓN DE CELESTINA QUIÑONES, compuesta de su esposo LAURO RIVERA QUIÑONES y sus hijos RAMÓN, CATALINO, RAFAEL, ANGELINA, DOLORES CONCEPCIÓN, MARÍA CRISTINA, ROSA PAULINA y JUSTA, conocida por PASTORA, RIVERA QUIÑONES, demandados, apelados y apelantes.

Núm. 10061.   *Sometido:* Enero 9, 1950.   *Resuelto:* Abril 25, 1950.

*Hon. Procurador General Vicente Géigel Polanco, Carlos J. Faure* y *Jaime J. Saldaña, Procuradores Generales Auxiliares,* abogados del demandante, apelante y apelado; *Antonio J. Matta,* abogado de los demandados, apelados y apelantes.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

El 4 de diciembre de 1947 El Pueblo de Puerto Rico instó pleito de expropiación forzosa para adquirir una parcela de 2,947.79 metros cuadrados sita en el pueblo de Ceiba y perteneciente a la Sucesión de Celestina Quiñones.

El demandante depositó como valor razonable del terreno la suma de $1,573.90 estando incluídos en esa cantidad $100 en que valoró una plantación de cañas existente en la parcela. En la vista del caso el tribunal inferior recibió prueba de una y otra parte y posteriormente, celebró una inspección ocular. Como resultado de la prueba practicada y de la inspección ocular, concedió a la demandada la suma de $2,373.50 por el terreno y $100 por la plantación. A los efectos de la valoración dividió la parcela en dos secciones. La parte del frente en toda su extensión de 75 metros en la calle Santa Rosa, por 12 metros de fondo, o sea, 900 metros cuadrados, a razón de $1.50 el metro, y el remanente, o sea, el fondo de la sección a que hemos hecho referencia, a razón de cincuenta centavos el metro.

Ambas partes apelaron. El demandante señala como errores: (*a*) que al llegar a sus conclusiones el tribunal inferior consideró evidencia que no había sido admitida; (*b*) al admitir evidencia de ventas de solares de 300 metros cuadrados celebradas por la Sucesión demandada en los años 1943 y 1944 por ser remotas, y los solares vendidos, tener mucha menor cabida que la parcela expropiada; y (*c*) al dividir la parcela en la forma en que lo hizo, a los efectos de determinar su valor.

Por otro lado, la Sucesión demandada señala los siguientes errores: (1) el no admitir en evidencia los recibos de contribuciones de los años 1945–46 y 1946–47 correspondientes a la finca principal, a fin de demostrar la tendencia a subir el valor de la propiedad; (2) el no admitir evidencia de un contrato de opción que un colindante tenía con otra persona; y (3) que la sentencia no está sostenida por la prueba.

▇▇▇ Analizando la prueba para llegar a sus conclusiones, la corte se expresó así:

"Sin embargo, teniendo en consideración toda la evidencia, y conviniendo con la conclusión del perito Villares, en cuanto a que debido a la zona inferior en que está enclavada la parcela, a la distancia del centro comercial del pueblo y de ciudades comerciales, a la clase de casas ya edificadas en la vecindad, a la falta de aceras, etc., porque así lo apreciamos en la inspección ocular practicada, creemos que el valor dado por unidad de metro cuadrado a cierta parte de la parcela es demasiado bajo.

"Tenemos que considerar que en 1943 y 1944, el demandado vendió de buena fe a compradores de buena fe a $2.50 el metro cuadrado en el frente que colinda con la calle Santa Rosa. Aparece del conjunto de la prueba aducida que en aquella época había una demanda extraordinaria por solares y viviendas en el pueblo de Ceiba debido a la construcción de las obras de carácter militar en Ensenada. A pesar de esta particularidad, el demandado sólo vendió dos solares al precio de $2.50 el metro cuadrado, y todavía en estas transacciones no se le pagó en efectivo, pues Pedro Cruz quedó adeudándole $200 de los $300 que valía el solar y Máximo Feliciano $400 de los $600 que valía su solar. Estas consideraciones nos llevan a la conclusión ineludible de que si aun con la demanda de solares en aquella época

en que abundaba el dinero extraordinariamente en Ceiba, Lauro Rivera pudo vender solamente dos solares, y éstos a crédito, ahora, actualmente, cuando ya no existen las obras que entonces había, cuando ha cesado el movimiento de las innumerables personas que por esa región laboraban y cuando ya no abunda el dinero en la forma que en aquellos años abundaba, dicha demanda se ha reducido y por tanto el valor del metro cuadrado ha bajado considerablemente.

"Apreciada toda la evidencia en conjunto es nuestra opinión que debe valorarse el metro cuadrado de la parcela expropiada en dos formas, a saber:

"1. La parte del frente, que linda con la calle Santa Rosa, de setenta y cinco (75) metros de frente, con un fondo de doce (12) metros, que es el que tienen los solares vendidos por el demandado, deben ser valorados y se valoran a un dólar cincuenta centavos ($1.50).

"2. El remanente, o sea, la parte posterior de la parcela, que en la hipótesis de que se hubiese construído en todo el frente, hubiese quedado inútil para fines de urbanización, deben ser valorados y se valoran a cincuenta centavos el metro.

"En cuanto al valor de las plantaciones de caña existentes en la parcela en la fecha de la adquisición por el demandante, la parte demandada no probó que valieran más de lo ofrecido, esto es, la suma de CIEN DÓLARES ($100)."

Una lectura de la parte de la opinión antes transcrita, demuestra que el tribunal basó su conclusión, en cuanto al valor de la propiedad, en el testimonio del perito Luis G. Villares. De manera, pues, que no puede sostenerse la proposición del demandante al efecto de que el tribunal fundara sus conclusiones en prueba no admitida. Con respecto al segundo error señalado por El Pueblo, bastará decir que consideramos que la evidencia de ventas celebradas en los años 1943 y 1944—habida cuenta de que el procedimiento se instó en 1947—no es tan remota que deba ser excluída por ese solo fundamento, y en cuanto a la diferencia de cabida, bastará repetir aquí lo que dijimos en *Pueblo* v. *Carmona*, 70 D.P.R. 312, 317:

". . . Arguye El Pueblo que la evidencia de ventas contemporáneas con la expropiación, no demostró que las parcelas ven-

didas fueran similares a la finca expropiada, ya que dichas ventas consistían de predios de 200, 400 y alrededor de 1,000 metros cuadrados, mientras las parcelas expropiadas totalizaban alrededor de 1.90 cuerdas. Pero es que la diferencia de cabida entre unos y otros predios no es tan grande que afecte considerablemente la diferencia de precio entre ellos."

En cuanto al error señalado por El Pueblo en tercer lugar, tampoco creemos que justifique una revocación, pues no hay duda que la parte de la parcela que da al frente de la calle, necesariamente vale mucho más, a los efectos de urbanización, que los terrenos que no tienen acceso a dicha vía pública.

Consideremos ahora los errores señalados por la Sucesión demandada. (1) Suponiendo, sin resolverlo, que hubiera constituído error el no admitir los recibos de contribuciones de la finca principal correspondientes a los años 1945-46 y 1946-47, somos de opinión que, considerada toda la prueba que tuvo ante sí la corte inferior y la conclusión a que llegó, el error, de haberse cometido, repetimos, no perjudicó los derechos sustanciales de los demandados y en consecuencia, no justifica la revocación de la sentencia. (2) Tampoco erró la corte al no admitir el contrato de opción, sencillamente porque esa evidencia constituía prueba especulativa. *Pueblo* v. *Carmona*, supra. Y por último carece de fundamento el tercero de los errores señalados por la demandada porque de toda la transcripción de evidencia resulta que las conclusiones a que llegó la corte están sostenidas por la prueba.

*Procede la confirmación de la sentencia.*